## THE CLEVELAND AND TOLEDO RAILROAD COMPANY *v.* FREDERICK PRENTICE AND ASA W. MADDOCKS.

In a proceeding by a railroad company, under the railroad act of 1848, authorizing an appropriation of lands on which to construct a railroad, the company described the land to be appropriated as " fifty feet wide on each side of said railroad as last surveyed through subdivision lots Nos. 1, 2, 3 and 4, fractional section No. 1 of township 10, south of range 7 east, commencing on the north bounds thereof, thence westerly and southerly on and near the boundaries thereof to a point in the west line of said No. 4, near the northwest corner ; also, lots Nos. 11, 12, 13, 14 and 15 of the subdivision of river tract No. 87, in said county." The application was filed February 28, 1851; and notice given March 4. View made and report filed April 21, and possession taken by the company April 22, 1851. In an action by a subsequent purchaser of the lands of the former owner, with notice, to recover the same from the company ; on proof that said road was surveyed and staked out previous to the 1st of April and found staked out by the viewers. Held, that said description was sufficiently certain in the appropriation proceedings.

ERROR to the district court of Lucas county.

The action in the common pleas was brought Frebruary 18, 1854, by Prentice and Maddocks against the Cleveland and Toledo Railroad Company, for the recovery of a piece of land one hundred feet in width across lot 15, in river tract 87, in Lucas county.

Prior to October 25, 1852, one Robert Piatt owned the whole of said lot 15, and on that day conveyed the same to Prentice and Maddocks.

The strip of land in controversy is a part of the roadway of said railroad company, and which the company instituted proceedings to appropriate to its use as a part of its roadway, while Piatt, who, at the time, was a nonresident of the State of Ohio, owned the whole lot 15.

The appropriation proceedings were instituted under the act of February 11, 1848, "regulating railroad companies." (2 Curwen, 1394.) The 9th section of that act provides as follows :

"Such corporation is authorized to enter upon any land for the purpose of examining and surveying its railroad line, and may appropriate so much thereof as may be deemed ne-

cessary for its railroad, including necessary side tracks, depots, workshops and water stations, materials for construction, except timber, a right of way over adjacent lands, sufficient to enable such company to construct and repair its road, and a right to conduct water by aqueducts, and the right of making proper drains. The corporation shall, forthwith, deposit with the clerk of the court of common pleas, or other court of record of the county where the land lies, a description of the rights and interests intended to be appropriated, and such land, rights and interests shall belong to said company, to use for the purpose specified, on making payment or giving security, as is hereafter provided. The corporation may, by its directors, purchase any such lands, materials, right of way or interest, of the owners of such land; or, in case the same is owned by a person insane or an infant, at a price to be agreed upon by the regularly constituted guardian or parent of such insane person or infant, if the same shall be approved by the court in which the description aforesaid shall be filed; and, on such agreement and approval, the owner, guardian or parent, as the case may be, shall convey the said premises, so purchased, in fee simple or otherwise, as the parties may agree, to such railroad company, and the deed, when made, shall be deemed valid in law. If the corporation shall not agree with the owner of the land, or with his guardian, if the owner is incapable of contracting, touching the damages sustained by such appropriation, such corporation shall deliver to such owner or guardian, if within the county, a copy of such instrument of appropriation. If the owner or his guardian, in case such owner is incapable of contracting, be unknown, or do not reside within the county, such corporation shall publish, in some newspaper of general circulation in the county, for the term of three weeks, an advertisement reciting the substance of such instrument of appropriation; upon filing such act of appropriation and delivery of such copy, or making such publication, the court of common pleas or other court of record of the county where the land lies, or any judge thereof in vacation, upon application of either party, shall appoint, by warrant,

three disinterested freeholders of such county, to appraise the damages which the owner of the land may sustain, by such appropriation; such appraisers shall be duly sworn; they shall consider the benefit as well as injury which such owner shall sustain by reason of such railroad, and shall, forthwith, return their assessment of damages to the clerk of said court, setting forth the value of the property taken, or damage done to the property; the amount of benefit conferred, and the difference between the value of, or damage done to, the property taken, which they assess to such owner or owners separately, to be by him filed and recorded; and thereupon such corporation shall pay to said clerk, the amount thus assessed, or secure the payment, to the satisfaction of such court or of the judge issuing the warrant. And on making payment or tender thereof to said clerk, or on giving such security as may be required, it shall be lawful for such corporation to hold the interests in such lands or materials thus appropriated, and the privilege of using any materials on said roadway within fifty feet on each side of the center of such roadway, for the uses aforesaid; the costs of such award shall be paid by such company; and, on motion, by any party interested, and showing said proceedings, the court may order payment thereof, and enforce such payment by execution. The award of said arbitrators may be reviewed by the court of common pleas, or other court in which proceedings may be had, or written exceptions filed by either party in the clerk's office, within ten days after the filing of such award; and the court shall take such order therein as right and justice may require, by ordering a new appraisement on good cause shown," etc.

The instrument of appropriation filed by the company in the office of the clerk of the common pleas of Lucas county, February 28, 1851, described the land intended to be appropriated, as follows:

"Fifty feet wide on each side of said railroad, as last surveyed, through subdivision lots Nos. 1, 2, 3 and 4, of fractional section No. 1, of township 10, south of range 7 east, commencing on the north bounds thereof; thence westerly

and southerly on and near the northerly bounds thereof to a point in the west line of said No. 4, near the northwest corner. Also lots Nos. 11, 12, 13, 14 and 15 " (the lot in question), etc., " of the subdivision of river tract No. 87."

On March 4, 1851, the company published notice to Piatt, stating the substance of the instrument of appropriation, and giving the description of the land as above.

On April 21, 1851, upon the application of the railroad company, appraisers were appointed, and a warrant issued.

The following is a copy of the return of the appraisers:

" In-lot *fifteen*, subdivision of river tract 87, in the 12-miles square reserve, at the foot of the Rapids of the Miami of Lake Erie, $\frac{64}{100}$ ac.

" Value of land appropriated,    -    -    -    $25.60
" Damages, nothing.
" Benefit to owners,    -    -    -    -    -    25.60
                                                ————
" Amount to be paid to owner,    -    -    -    $00.00"

April 22, 1851, the railroad company took possession of the land, immediately after the appraisers made their return, and proceeded to construct its railroad thereon, and thereafter remained in possession of the same, using it for the purposes of its road. Of all which Prentice and Maddocks had full knowledge when they bought of Piatt.

The railroad track had been staked out and surveyed prior to April, 1851, but when does not appear. A plat of the road was recorded in a book of the company, under date of November 15, 1851. When the plat was made is not shown.

The district court, at its April term, 1860, on appeal, decided that the railroad company, by its appropriation proceedings, acquired no right or title to the land in controversy, and that Prentice and Maddocks were entitled to its possession, and rendered judgment accordingly.

The company moved for a new trial on the ground that the decision and judgment of the court were against the weight of the evidence and contrary to law.

This motion was overruled, and the company excepted, and their bill of exceptions, setting forth all the evidence, was allowed and filed in the case.

The company thereupon filed its petition in error in this court to reverse the judgment of the district court.

*Hitchcock, Mason & Estep,* for plaintiff in error, argued— That the appropriation and proceedings connected with it are not void on account of uncertainty and insufficiency in the description of the property, as is claimed by the defendants in error, and cited *Coster* v. *N. J. R. R. Co.,* 3 Zabr. 234; 4 Wharton, 47; *P. W. & B. R. R. Co.* v. *Trimble,* 2 Am. Railway Cas., 245; *Sheldon* v. *Newton,* 3 Ohio St. Rep. 498; 22 Ill. 399; *Henley* v. *L. I. R. R. Co.,* 13 Barb. S. C. Rep. 654; 4 Zabr. 712.

*Hill & Pratt,* for defendants in error, argued—That the proceedings were not in compliance with the statute, which must be *strictly* followed; that *certainty of description* is essential; and that the description in these proceedings is so uncertain, indefinite and insufficient as to render the whole proceedings *void;* that no title ever did or could pass by these proceedings to *any specific part* of lot 15, for want of description, and cited *Hicks* v. *Fish,* 4 Mason, 310; *Hinckley* v. *Hastings,* 2 Pick. 162; *Davison* v. *Gill,* 1 East, 64; *Atkins* v. *Kennon,* 20 Wend. 241; *Boswell's lesse* v. *Otis et al.,* 9 How. 346; *Atlantic & Ohio R. R. Co.* v. *Sullivan,* 5 Ohio St. 276; *Harbeck* v. *City of Toledo,* 11 Ohio St. Rep. 219; Ib. 227; *Bonaparte* v. *C. & A. R. R. Co.,* 1 Bald. C. C. Rep. 229; *Vail* v. *Morris & Essex R. R. Co.,* 1 Zabr. 189.

SUTLIFF, C. J.—The plaintiffs below, in support of their claim to recover the lands in question, showed by their proof a conveyance to them on the 23d day of October, 1852, of lot No. 15, by Robert Piatt, who held the title at the time of the location of the railroad, and who, it is admitted, continued to hold a perfect title at the time of executing his deed, unless divested of the land in controversy by the proceedings of the

railroad company, as stated. If, therefore, at the time of the institution of the action below (February 18, 1854), Piatt, had he made no conveyance, could have recovered the land from the company so occupied through lot 15, as their road-track, then and in that case Prentice and Maddocks, his grantees, were entitled to recover; otherwise they were not.

The defendant below relied upon the proceedings of appropriation which it gave in evidence to show the lands appropriated as a railroad track on the 21st of April, 1851; and it seems to be conceded by the defendants in error that with one exception those proceedings were regular, and that all the steps were therein taken to operate as an appropriation.

But it was objected by the plaintiffs below that the description of the land intended to be appropriated by the proceedings was too vague and uncertain to admit of the proceedings being operative to appropriate either the lands in question or any other lands. It is insisted by the plaintiff in error that the description was sufficiently certain, and, in fact, embraced the lands in question, and that the district court, therefore, erred in not regarding the lands legally appropriated by the company for its roadtrack through said lot No. 15.

We are referred by the defendants in error to the case of *Hicks* v. *Fish*, 4 Mason, 310, and the case of *Hinckley* v. *Hastings*, 2 Pick. 162, and various other cases, to show that certainty of description is essential.

In the case of *Hicks* v. *Fish*, which was an action of trespass *quære clausum fregit*, and plea that the *locus in quo* was a highway, it was held by Judge Story that a highway, to be legally located, "must have some definite location and boundary." And so in that case it was held that part of the description from a point "even with the south end of the *great pine swamp, and from thence, as it may be found the most convenient way, to the highway at the north end* of the pond commonly called Little Pond," etc., was void for uncertainty.

And so in the case of *Hinckley* v. *Hastings*, in a like action and defense, it was held that the following description of the street was insufficient for uncertainty: "A street at least forty feet wide shall be opened on the east side of the land

purchased by them, which will be in a straight line with Blossom street," etc., inasmuch as in that case the proof showed that it would be impossible to lay out such a street on the east side of said lands, and, at the same time, "in a straight line with Blossom street."

But in both the foregoing cases it should be remarked that the action of trespass was for acts done in opening the road.

The authorities will be found, I apprehend, less strict in requiring definite descriptions of roads, where the question is not made until after the road has been opened and in use, than in those cases where the question as to the *locus in quo* has been raised *in limine*, before the road has yet been opened and in use. This remark, doubtless, had its application in the case of *Atlantic and Ohio R. R. Co.* v. *Sullivan et al.*, 5 Ohio St. Rep. 276, to which we are also referred by counsel for defendants in error. For in the case of *Callenden et al.* v. *Painesville & Hudson R. R. Co.*, 11 Ohio St. Rep. 516, a description not less vague was held sufficient. And the charters referred to in the latter case show, very clearly, that descriptions less definite than that of the Atlantic & Ohio R. R. case, have, from very early legislation upon the subject, in this state, obtained more or less extensively; and without having their sufficiency questioned on the ground of want of certainty.

Indeed, very little light is shed upon the case before us by reported cases to which we are referred. The case of *Vail* v. *Morgan & Essex R. R. Co.* (1 Zabriski, 191), to which our attention has been particularly invited by counsel for defendants in error, it is true, was a case like the one at bar, which involved the validity of an attempted appropriation of lands; and it was there, as here, objected to the validity of the appropriation, that there was a fatal want of certainty in the description. But the record in that case showed only the following description in the notice to the owner, "that an application will be made to assess the price or value of the land owned by him, over which said company has located its branch road from their original road to Dover, and all the damages which the commissioners are authorized to

assess." And the court in that case say : "This is the whole
specification upon the face of the proceedings;" and adds
*  *  *  "The act of incorporation requires that a survey
of the route of the road shall be deposited in the office of
the secretary of state. To that source the landholder would
naturally look for information as to the extent of the claim
of the company, and the manner in which his rights were to
be affected." The survey presented in that case, or the
" paper," the judge adds, " is a mere specification in figures
of the courses and distance of the survey, without a designa-
tion of the lines of lands, or reference to a single monu-
ment from the beginning to the ending point.  *  *  *  It
gives him no information whatever as to the location of the
road upon his land, nor can he ascertain it except by a survey
of the whole route." And the description of the property in
that case was certainly insufficient, of itself, as held by the
court, to enable the owner or appraisers to know what land
was to be appropriated.

But how is it in the case before us ? As we have seen, our
statute authorizes the company to " enter upon any lands for
the purpose of examining, and surveying its railroad line,
and appropriate so much thereof as may be deemed necessa-
ry," etc. In this case the notice mentions the survey as
having been made, as the statute evidently contemplates it
should be, before the proceeding to appropriate. The de-
scription in the notice is as definite a description of a surveyed
railroad track as could well be made; and if the survey, had
in fact, been made, such a description in a deed would be
even more certain than could be expressed by courses and
distance ; and would be, beyond doubt, a sufficient description
in the deed of conveyance to pass the title in the railroad
track to the company. But the record only shows that the
road-bed had been surveyed and staked out previous to the
1st day of April; yet the return of the commissioners that
they had viewed and appraised the lands described, and giv-
ing, as they do, the precise quantity of land, clearly implies
that they found the road surveyed as described in the notice.
Indeed, we do not understand counsel to insist particularly

upon the want of certainty at the time the appraisers made their view and appraisal on the 21st of April. But it is insisted that the plaintiffs in error did not, on the trial below, make proof that the road-bed was, in fact, surveyed and staked out on the 28th of February, or on the 4th of March, 1851, at the time of applying for the appropriation and giving notice to Piatt by advertisement. To this objection, we think, the defendant below might well have claimed, under the law and circumstances of the case, that after the proof of so much by the company in support of the defense, the burden of proof was reasonably shifted upon the plaintiffs below to rebut the presumptions in favor of the title of the company, arising from their proof. Indeed, it may well be questioned whether a survey made, and monuments set along the land to be appropriated, as described in the notice, as early as the 1st of April, would not have been sufficient. But in this case, from all that appears upon the record, the reasonable presumption would be that the petition correctly described the land as then surveyed. The proof, it is true, is not positive that the survey was made as early as prior to the 1st day of March, but it is certain that the survey was made prior to the 1st day of April; and there is no proof or circumstances tending to show that it was not in fact made, as recited in the notice, at the time the notice was given.

It certainly is not an unreasonable presumption, after proof of the fact that a road or canal had been surveyed and staked out, that when worked and in operation as a public thoroughfare, without any objection to the *locus in quo*, it should, if afterward questioned, be presumed to have been opened *where* surveyed and located. And more especially is such presumption clear, in such a case, where the stakes or monuments set are, after its completion, found to be all removed, as, in the case of a railroad or canal, they necessarily must be, when opened on the line so surveyed and staked.

We, therefore, regard the proof made by the defendants below, in relation to the proceedings to appropriate the lands in question, as by no means void for uncertainty of description; but as *prima facie* embracing the lands in question,

and sufficient in law, unless rebutted by countervailing proof on the part of the plaintiffs below; and no such proof appears to have been offered upon the trial.

The judgment of the district court must, therefore, be reversed with costs. And this court, thereupon proceeding to render such judgment in the case as the district court should have rendered, orders that the petition so filed by the plaintiffs below be dismissed; and it is thereupon adjudged that the defendants below recover of the plaintiffs below their costs, etc.

Judgment accordingly.

PECK, GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.